IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANACHY KING, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 24-cv-2696 |
| | : | |
| CARRABBA'S ITALIAN GRILL, LLC, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                                                 November 12, 2025
**UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Anachy King ("King" or "Plaintiff) filed a civil complaint against Defendant Carrabba's Italian Grill, LLC[1] for negligence based on a slip and fall that occurred at Defendant's restaurant. Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's claims. Doc. 25. Plaintiff filed a Response in Opposition to Defendant's Motion. Doc. 26.

      For the following reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

    **I.  FACTUAL BACKGROUND**

      The facts in this case are largely undisputed. Plaintiff alleges that on or about April 7, 2023 between 4:00 p.m. and 5:00 p.m. she tripped and fell while walking to the bathroom at the Carrabba's location at 500 Route 38 East, Maple Shade, New Jersey, 08052. Doc. 1, at 5, ¶ 12; Doc. 25, at 1.[2] Plaintiff claims she tripped "due to highchairs[3] that were stacked approximately 3

---

[1] The Complaint was originally filed against Bloomin' Brands Inc. t/a and d/b/a Carabba's Italian Grill, but the parties stipulated to amend the caption on July 22, 2024 and named Carrabba's Italian Grill, LLC as Defendant. Doc. 5.
[2] The citations in this opinion are to the CM/ECF pagination of the documents.
[3] Defendant refers to them as "booster seats" in its filings and Plaintiff also calls them booster seats in her deposition. The complaint, however, uses the term highchairs. There is no material difference for purposes of deciding the motion what they are called, and the parties have used them interchangeably. The Court uses booster seats throughout the opinion for consistency's

or 4 high" when "[t]he toe of [her] right shoe caught an edge on the high chair and . . . [P]laintiff was violently thrown to the ground."  Doc. 1, at 5, ¶ 12.

Defendant's counsel asked for more details about the incident at Plaintiff's deposition. Plaintiff recounted that after arriving at Carrabba's, she walked to the bathroom.  Doc. 25-6, at 70-71.  Plaintiff testified as follows:

Q.  All right.  You're heading towards the bathroom.  Was anything blocking your vision?

A:  No.

Q.  At some point in time you said you did not make it to the bathroom?

A.  No, I didn't.

Q:  What happened?

A:  As I rounded the corridor that leads to the bathroom there was a row of booster seats -- like three of them -- three stacks and two additional chair[s] and seating for patrons. And the floor was clear.  And I'm walking towards the bathroom in the corridor, and I believe the third stack my foot somehow got caught on the booster seat, and I went down and my arm got caught on the second chair.  Doc. 25-6, at 76-77.

Plaintiff hit both knees on the tile floor and struck her right arm on a chair as she fell forward. Id. at 85-86.

Plaintiff testified she did not recall anything hanging from the booster seats.  Id. at 80. She reported the floor looked clean with no debris on it.  Id. at 77.  Plaintiff described the booster seats as stacked two or three high at about hip height and that they were pushed up against the right side of the wall in the corridor to the bathroom.  Id. at 78-80.  Plaintiff testified she had no trouble walking by the first set of booster seats before she fell on the second or third set of booster seats.  Id. at 81-82.

---

sake and because they were called booster seats in Plaintiff's deposition.  Nevertheless, from the pictures provided to the Court, they appear to be highchairs.

Plaintiff began using a cane in 2006 or 2007 at the recommendation of her physical therapy after an injury to her left knee. Id. at 53-55. Plaintiff has continued using a cane since that time to help with her gait and how she walks. Id. at 52, 63.

Immediately prior to the fall, Plaintiff was using her cane, and she possessed her cane at Carrabba's at the time of the incident. Id. at 66-67. However, Plaintiff chose not to bring her cane with her to the bathroom because "[e]verything looked stable," she did not have to "negotiate in [her] walking," and she just needed to go to the bathroom. Id. at 71. Plaintiff had not been to the Maple Shade Carrabba's location where the incident took place before. Id. at 69.

Plaintiff did not retain a liability expert for trial purposes. Doc. 25, at 5, ¶ 10. She complains of rotator cuff issues, including a rotator cuff tear, and knee pain and sprains, among other injuries. Doc. 1, at 6, ¶ 15.

## II. PROCEDURAL HISTORY

On June 19, 2024, Plaintiff filed a complaint against Carrabba's for negligence. Doc. 1, at 5-6. She claims Defendant was negligent in maintaining a safe condition on the premises, failing to inspect the premises, failing to warn Plaintiff about the existence of a dangerous condition and to correct the dangerous condition, and failing to use care under the circumstances. Id.[4] Defendant filed its Answer on August 19, 2024. Doc. 8. The parties consented to proceed before a Magistrate Judge and the case was referred to me. Docs. 12 & 13. On July 28, 2025, Defendant filed a Motion for Summary Judgment. Doc. 25. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on August 26, 2025. Doc. 26. The case is scheduled for compulsory arbitration on January 6, 2026. Doc. 24.

---

[4] Thereafter, the parties signed a stipulation amending the complaint to strike "all mentions or references to reckless conduct or recklessness on the part of the Defendant." Doc. 7. It does not

3

## III. LEGAL STANDARD

A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "'might impact the outcome of the suit under the governing law. . . .'" Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is "genuine" if, after reviewing the evidence, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

The Court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion for summary judgment. Id. at 255. But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." Id. at 252. A party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

The moving party has the burden to establish the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Then the burden shifts to the non-moving party to come forward with "specific facts showing that there is a *genuine* issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (citing Fed. R. Civ. P. 56(e)). This includes specific facts and affirmative evidence contradicting the facts and evidence the moving party offers. Anderson, 477 U.S. at 256-7. "[I]f the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to [its] case and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." SodexoMAGIC LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022) (alterations in

---

appear the District Court judge ever signed the stipulation. Id.

original) (quoting Celotex, 477 U.S. at 322).  When deciding the merits of a motion for summary judgment, the Court's role "is not to evaluate the truth of the matter, but to determine whether there is a genuine issue for trial."  Nunez v. Costco Wholesale Corp., No. 22-5531, 2025 WL 2813836, at *3 (D.N.J. Oct. 3, 2025) (citing Anderson, 477 U.S. at 249).  The court does not have the responsibility to "'comb the record in search of disputed facts.'"  Hlywiak v. Nat'l R.R. Passenger Corp., 223 F. Supp. 3d 395, 397 (E.D. Pa. 2016) (quoting N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redevelopment Agency, 68 F. Supp. 3d 545, 549 (D.N.J. 2014)).  The Court of Appeals "has emphasized that '[j]udges are not like pigs, hunting for truffles buried in' the record."  Hlywiak, 223 F. Supp. 3d at 397 (quoting Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (additional quotations and citations omitted)).

To establish a negligence claim in New Jersey,[5] a plaintiff must show "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages."  Shields v. Ramslee Motors, 223 A.3d 172, 176 (N.J. 2020) (citations omitted).  "A business owner owes a duty to the public to use reasonable care in maintaining the business premises in a reasonably safe condition."  Devincentis v. Wal-Mart Stores, Inc., No. 09-3138, 2010 WL 1931260, at *3 (D.N.J. May 13, 2010) (citations omitted).  This includes "a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered."  Webb v. Hard Rock Hotel & Casino Atl. City, No. 23-cv-2181, 2025 WL 1393196,

---

[5] Defendant acknowledges the alleged fall occurred in New Jersey and Plaintiff resides in Pennsylvania. Doc. 25, at 6, n.1. Defendant is incorporated in Delaware and does business in both New Jersey and Pennsylvania. Id. Defendant asserts that because the most significant acts happened in New Jersey, New Jersey law should apply. Id. Defendant also points out and the Court agrees that no choice of law is necessary here because the elements of a negligence claim under New Jersey and Pennsylvania law is the same. Id.; compare Shields, 223 A.3d at 176 with Krentz v. Consol. Rail Corp., 910 A.2d 20, 27-28 (Pa. 2006). The Court will use New Jersey negligence law here because the trip and fall occurred at the Carrabba's location in Maple Shade

at *2 (D.N.J. May 14, 2025) (quotations and citations omitted). It also includes maintaining the premises in a safe condition and not creating conditions that would make the premises unsafe. Senisch v. Tractor Supply Co., No. 16-cv-47, 2018 WL 324717, at *5 (D.N.J. Jan. 8, 2018) (quotations and citations omitted). The actual or constructive knowledge "inquiry is dependent upon [an] injury being caused by a dangerous condition of [the] property, which involves an unreasonable risk of harm." King v. Harrah's Atl. City Operating Co., No 21-cv-10924, 2023 WL 3052313, at *2 (D.N.J. April 24, 2023) (internal quotations omitted). Importantly, however, "'[n]ot every property condition on which persons can hurt themselves is unreasonably dangerous or hazardous.'" Id. (Braboy v. United States, No. 16-3105, 2018 WL 2002789, at *5 (D.N.J. Apr. 30, 2018). Moreover, proof of a fall, by itself, is not adequate to create an inference of negligence "because the mere existence of a dangerous condition does not, in and of itself establish actual or constructive notice." Prioleau v. Kentucky Fried Chicken, Inc., 85 A.3d 1015, 1022 (N.J. Super Ct. App. Div. 2014) (citations omitted). To prevail on a negligence claim, the plaintiff must prove that Defendant actually breached its duty to plaintiff and resulting damages. See Smith v. Whitaker, 734 A.2d 243, 250 (N.J. 1999) (citations omitted).

## IV. **DISCUSSION**

Defendant acknowledges it owed a duty of care to its customers in the restaurant. Doc. 25, at 6; Doc. 25-1, at 9. The main question in this case is whether Defendant breached that duty.

Defendant asserts it is entitled to summary judgment as a matter of law because Plaintiff has failed to establish any disputed material facts that Defendant breached its duty or that Defendant's act or omission caused Plaintiff's fall. Doc. 25-1, at 10, 15-16. Moreover, Defendant argues summary judgment is warranted because she has not provided an expert report

---

New Jersey.

despite alleging a defect. Doc. 25-1, at 10, 17-19. Plaintiff opposes summary judgment and claims the stacked booster seats in the hallway created a safety issue and tripping hazard. Doc. 26-1, at 5-6. Plaintiff also asserts no expert report was necessary to show that "the defendant created some defect that caused plaintiff's fall." Id. at 6.

The case of Brooks v. Wal-Mart Stores, Inc., 854 Fed. App'x 422 (3d Cir. 2021) is instructive here. In Brooks, the Third Circuit affirmed the District Court's grant of summary judgment to Wal-Mart in plaintiff's negligence action. Id. at 424. Plaintiff, on his way to check out, proceeded through the men's clothing department at Wal-Mart, and encountered two unaccompanied shopping carts that were blocking his path. Id. After successfully "finagling" his way around the first cart, after trying to go around the second cart he struck his left foot on a 3 ½ foot wide by 1 ½ foot tall shoe bench used to try on footwear and injured his toes and feet. Id. The bench was not blocking the aisle in which he was walking. Id.

The District Court found plaintiff had not established that Walmart had actual or constructive notice of the dangerous condition on the premises. Id. at 425. It noted New Jersey courts had held that shoe benches were not "inherently dangerous instrumentalities" and "when used with due care, the Court cannot conceive how they may be inherently dangerous." Id. The District Court stated New Jersey courts have applied the same reasoning to shopping carts. Id. (citations omitted). New Jersey courts have also held "'minor imperfections' or minor defects will not give rise to an actionable claim." Id. (citations omitted). Therefore, the District Court concluded that no reasonable jury could find that Walmart was negligent for failing to search out and cure a minor defect—like a shoe bench that maybe was a few inches out of place. Id.

The Court of Appeals agreed. Id. at 426. The Circuit found "[t]he District Court correctly determined that none of the conditions identified by [Plaintiff]—a clothing aisle, shopping carts, or shoe bench—constituted dangerous conditions on Walmart's property and that

7

the store could not have foreseen an unreasonable risk of injuries to customers such as [Plaintiff.]" Id. Additionally, the Third Circuit found the shopping carts and shoe bench were not blocking the aisle, the bench did not raise a substantial risk in Walmart's mode of doing business, and shopping carts did not create a substantial risk of injury, provided they were used with due care in a way that is reasonably foreseeable a person would use them. Id. at 426-427. The Third Circuit agreed no reasonable jury would find Wal-Mart negligent and affirmed the District Court's decision. Id. at 427-28.

The reasoning in Senisch similarly applies to this case. See generally Senisch, 2018 WL 324717. In Senisch, the District Court granted Defendant Tractor Supply Company store's motion for summary judgment on plaintiffs' claims, which included a negligence claim on behalf of Mr. Senisch. Id. at *1. On Black Friday, plaintiffs drove to the store, parked their car, and walked approximately thirty feet to the sidewalk. Id. As they approached the store, they saw a shopping cart with a store circular in it and stopped to read it with their backs to the store. Id. After Mr. Senisch reviewed the circular, he turned around and caught his foot underneath a hand truck about five feet from the entrance of the store. Id. Mr. Senisch testified "he flew over it crossways, lifting it approximately a foot off the ground." Id. Both plaintiffs were sure the hand truck was not there when they walked to the shopping cart, and did not know how long the hand truck had been there or how it got there. Id.

When rejecting the negligence claim, the District Court found the mode-of-operation doctrine did not apply. Id. at *8.[6] The court also determined that plaintiffs could not show

---

[6] The mode-of operation rule states "when a substantial risk of injury is inherent in a business operator's method of doing business the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 317 (N.J. 2003). In those cases, the plaintiff is entitled to an inference of negligence and the burden of production shifts to the defendant to show that it did "all that a reasonable prudent man would do in the light of the risk of injury [the] operation entailed.'" Wollerman v. Grand Union Stores,

actual or constructive knowledge of any dangerous condition. Id. at *6, *8. It did "not find this to be an incident 'likely to occur' and [did] not find the providing of hand trucks to be a dangerous condition." Id. at *7. The court equated a hand truck, a large object, to a shoe bench, and found "[a] reasonably prudent person would have been able to observe a hand truck if one were left in his or her lane of traffic." Id. at *8; see also Carney v. Payless Shoesource, Inc., No. A-2680-07T2, 2009 WL 425822, at *1-*2 (N.J. Super. Ct. App. Div. Feb. 24, 2009) (per curiam) (finding, in part, when deciding to affirm grant of summary judgment to defendant on negligence claim that use of two foot tall by two-foot-wide movable shoe bench "did involve some risk of harm, but not to an extant[sic] . . . duty to take measures against the harm was created"). The District Court found the negligence claim must be dismissed. Id. at *8.

In this case, Plaintiff has not demonstrated a general issue of material fact for a jury to find that Defendant breached its duty of care to Plaintiff. Plaintiff testified that nothing was blocking her vision of the three stacks of booster seats in the hallway on her way to the bathroom. Doc. 25-6, at 76-77. She also represented the floor was clear. Id. at 77. In fact, Plaintiff successfully maneuvered around the first stack of booster seats without any problem. Id. at 81-82. Plaintiff also testified that the booster seats were stacked up against the right side of the wall, out of the way of the path leading to the bathrooms. Id. at 78-80. Plaintiff could not

---

Inc., 221 A.2d 513, 515 (1966). It applies generally to self-service businesses "designed to allow the patron to select and remove the merchandise from the premises without intervention from any employee of the storekeeper." Craggan v. Ikea USA, 752 A.2d 819, 825 (N.J. Super. Ct. App. Div. 2000). The mode of operation doctrine does not apply here, and Plaintiff has not raised it in its opposition to Defendant's motion for summary judgment.

recall anything hanging off the booster seats.  Id. at 80.  None of these facts demonstrate a genuine issue of material fact that Plaintiff breached its duty of care to Plaintiff.

Plaintiff argues that "[a]ny trip[ping] hazzard [sic] would have been eliminated if the highchairs had been stored in an area not accessible to defendant's customers," and that "defendant did nothing to prevent the fall[]over the high chairs," and "had every reason to foresee her fall."  Doc. 26-1, at 5-6.  Again, Plaintiff's argument lacks merit.  A stack of booster seats positioned against the right side of the wall out of the way in a corridor that Plaintiff had to navigate, like a shoe bench at the end of an aisle, is not a "inherently dangerous instrumentality" or condition that Defendant had to guard against on its premises.  See, e.g., Brooks, 854 Fed. App'x at 426-27; Carney, 2009 WL 425822, at *2.  Moreover, Plaintiff, as a reasonably prudent person, would have been able to observe it in her "lane of traffic" on the way to the bathroom.  See Senisch, 2018 WL 324717, at *8; King, 2023 WL 3052313, at *3 (stating "any danger . . . bed frame could have posed was undoubtedly neutralized by its clear and obvious visibility in the room," including plaintiff's fall occurring during daylight with curtains open in room).  Accordingly, Plaintiff has not presented any genuine issues of material fact indicating that Defendant breached its duty of care to Plaintiff or that Defendant's act or omission caused Plaintiff's fall.  See Celotex, 477 U.S. at 322-23; SodexoMAGIC LLC, 24 F.4th at 204; Webb, 2025 WL 1393196, at *2.

Finally, to the extent Plaintiff asserts in her complaint that some defect at the restaurant caused Plaintiff's fall, that claim also fails.  Plaintiff has not produced any evidence whatsoever showing Defendant created some defect that caused Plaintiff's fall and injuries, or through any expert report that Defendant's act or omission was responsible for Plaintiff's fall.  See Webb, 2025 WL 1393196, at *3 (finding plaintiff did not establish necessary breach of duty for

negligence claim against hotel when he failed to present any evidence of dangerous condition or defect regarding closet door in hotel room or present any expert opinion regarding alleged door defect that predisposed door to fall on plaintiff after plaintiff's buttocks contacted door); King, 2023 WL 3052313, at *2-*3 (plaintiff did not show based on record before court how bed frame plaintiff tripped over was defective or posed unreasonable risk of harm, nor did plaintiff offer any expert testimony demonstrating bed frame created dangerous condition or was contrary to industry standards when one corner of bed extended beyond mattress) (citations omitted).  For all these reasons, Defendant's motion for summary judgment on all claims is granted.[7]

## V. CONCLUSION

The Court finds that no genuine issue of material fact exists regarding whether Defendant breached its duty of care to Plaintiff by storing the booster seats in plain view on the right side of the hallway leading to the bathrooms.  As a result, Defendant's Motion for Summary Judgment is hereby **GRANTED,** and all of Plaintiff's claims are dismissed with prejudice.  An appropriate order will follow.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge

---

[7] Although the Court need not reach the issue to rule on the motion for summary judgment, it is noted that Plaintiff's failure to use her cane on the way to the bathroom—which she testified she regularly used for the past several years to help her gait—could be deemed negligent conduct.